IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00214-REB-KLM

REGIONAL DISTRICT COUNCIL, by and through Daniel S. Parker, in his representative capacity as President,
DANIEL S. PARKER, in his representative capacity as President of Regional District Council,
REGIONAL LOCAL UNION NO. 847, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS, AFL-CIO, by and through Donald A. Zampa, in his representative capacity as Administrator,
DONALD A. ZAMPA, in his representative capacity as Administrator of Regional Local Union No. 847, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO,
REGIONAL DISTRICT COUNCIL WELFARE TRUST FUND, by and through its Board of Trustees,
REGIONAL DISTRICT COUNCIL VACATION TRUST FUND, by and through its Board of Trustees, and
REGIONAL DISTRICT COUNCIL TRAINING TRUST, by and through its Board of Trustees,

    Plaintiffs,

v.

MILE HIGH RODBUSTERS, INC.,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on The Reinforcing Company, Inc.'s ("The Reinforcing Company") **Motion to Quash FRCP Rule 45 Subpoena Issued to The Reinforcing Company** [#57][1] (the "Motion"). Plaintiffs filed a Response [#59] in opposition

---

[1] "[#57]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

to the Motion [#57]. No Reply was filed. The Court has reviewed the Motion [#57], the Response [#59], the case record, and the applicable law. Accordingly, the Court is fully advised in the premises. For the reasons set forth below, the Motion [#57] is **DENIED**.

**I. Background**

In January 2013, Plaintiffs filed suit against Defendant to collect delinquent Employee Retirement Income Security Act of 1974 ("ERISA") fringe benefit contributions. *Compl.* [#1] at 6-9. In mid-2014, Defendant ceased operations. *Depo. of Brandon James Garcia* [#59-2] at 20.[2] In March 2015, the Court entered a $79,079.87 default judgment against Defendant. *Recommendation* [#44]; *Order* [#45]. To collect the judgment, Plaintiffs attempted garnishment via Colorado State Bank and Wanzek Construction, Inc. *Writ of Continuing Garnishment* [#50]; *Writ of Continuing Garnishment* [#52]. These attempts proved unsuccessful. *Motion* [#7] at 2; *Response* [#59] at 1.

In December 2018, Plaintiffs issued a Subpoena to Testify at a Deposition in a Civil Action [#57-1] (the "Subpoena") to The Reinforcing Company. The Subpoena requests that The Reinforcing Company, at the deposition, produce a series of contract, financial, property, and meeting records. *Subpoena* [#57-1] at 1, 6-7. In January 2019, The Reinforcing Company filed the Motion [#57], requesting the Court quash the Subpoena [#57-1] for four reasons:

> [1] The [S]ubpoena and document request is not relevant to the case at hand which involves a request for documents from an entirely unrelated entity. [2] The [S]ubpoena on its face shows no need for the documents since [The Reinforcing Company] was formed after the judgment against Defendant was

---

[2] Deposition citations reference the deposition transcript page number rather than the docket page number.

entered[.] [3] The time covered in the [S]ubpoena request has nothing to do with the time the Defendant operated. [4] The burden of gathering the records over the period from 2016 to 2018 in the depth that the request is made imposes an undue burden due to its lack of relevance to the time period the Defendant operated in.

*Motion* [#57] at 3-4.

"Plaintiffs," the Response explains, "believe that [The Reinforcing Company] is the alter ego of [D]efendant." *Response* [#59] at 4. In January 2016, Plaintiffs deposed Brandon Garcia ("Mr. Garcia"). *Id.*; *Depo. of Garcia* [#59-2] at 1. Plaintiffs claim that Mr. Garcia's deposition "established several connections," linking The Reinforcing Company and Defendant. *Response* [#59] at 4. First, Mr. Garcia "was an owner [as well as] officer of [D]efendant" and currently serves as The Reinforcing Company's Superintendent. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 20, 77-78. Second, Mr. Garcia's wife, Kristine Garcia, owns The Reinforcing Company. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 14. Third, Mr. Garcia's father, Bob Garcia, "worked in a supervisory role" for Defendant and currently serves as The Reinforcing Company's Operations Manager. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 14, 25, 52. Finally, Defendant and The Reinforcing Company engages in the "same type of business," namely, reinforcing concrete. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 23, 65.

According to Plaintiffs, the "several connections" linking The Reinforcement Company and Defendant "raise[] more than a 'colorable suspicion' that [The Reinforcing Company] is the alter ego of [D]efendant." *Motion* [#57] at 5. Thus, Plaintiffs conclude, the Motion [#57] "must be denied." *Id.*

## II. Analysis

Federal Rule of Civil Procedure 69(a)(2) provides that, "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these [R]ules." Indeed, "all discovery procedures provided in the [R]ules are available." Fed. R. Civ. P. 69(a)(2) advisory committee's note to 1970 amendment; *see also Caisson Corp. v. Cty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974) ("all the discovery devices of the Rules may be used as in the progress of the action"). While, "[o]rdinarily[,] third persons can be examined only about the assets of the judgment debtor and cannot be required to disclose their own[,] probing questioning is allowed with regard to third parties with close ties to the judgment debtor." 12 Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 3014 (3d ed. 2019).

To permit probing questioning of third parties, courts require a "'somewhat heightened showing of necessity and relevance—*i.e.,* at least some demonstration of concealed or fraudulent transfers or alterego [sic] relationship with the judgment debtor.'" *Mountain Dudes, LLC v. Split Rock, Inc.*, No 2:08-cv-00940, 2013 WL 5435707, at *2 (D. Utah Sept. 29, 2013) (quoting *Uniden Corp. of Am. v. Duce Trading Co., Ltd.*, No. 89-cv-0878E, 1993 WL 286102, at *1 (W.D.N.Y. July 19, 1993)). The "somewhat heightened" standard "does not require an actual finding of alterego [sic] or fraud," only "evidence sufficient to raise legitimate questions about the relationship between the judgment debtor and the [third party], and consequently, transactions between the two." *Mountain Dudes*, 2013 WL 5435707, at *2. Any one piece of evidence, standing alone, "might not be sufficient to make the requisite showing," however, "the combination of [pieces of evidence] provide[s] a basis for the [judgment] creditor's allegation of an alter ego relationship

sufficient to justify the requested discovery." *Democratic Republic of Congo v. Air Capital Grp., LLC*, No. 12-Civ-20607-COOKE/TORRES, 2018 WL 324976, at *2 (S.D. Fla. Jan 8, 2018) (citing *Trustees of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993)).

Among the wide range of evidence sufficient to make "some demonstration of concealed or fraudulent transfers or alterego [sic] relationship," courts frequently cite suspicious timing of the third party's formation, similarity of the judgment debtor and third party's businesses, overlap or close familial relationships between the judgment debtor and third party's management, overlap between the judgment debtor and third party's employees, shared customers, as well as use of the same business address, equipment, attorneys, and registered agents. *Mountain Dudes*, 2013 WL 5435707, at *2-3; *see, e.g.*, *Air Capital Grp.*, 2018 WL 324976, at *3 (judgment debtors and third parties shared principals, places of business, and registered agents); *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 9 (D.D.C. 2006) (verdict against judgment debtor returned and third parties formed on same day, judgment debtor and third parties controlled by immediate members of same family, and third party assumed judgment debtor's contractual obligations on construction project); *Lane Crane Serv.*, 148 F.R.D. at 664 (judgment debtor defunct within one month of third party's formation, son of judgment debtor's principal owned third party, judgment debtor and third party used same address, engaged in same business, shared at least one customer, and third party employed some of judgment debtor's former employees); *Magnaleasing Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977) (same individuals controlled judgment debtor and third party).

While Rule 69(a)(2) permits the judgment creditor to "make a broad inquiry to discover hidden or concealed assets of the judgment debtor," finally, discovery must "be pertinent to the goal of discovering concealed assets and not be allowed to become a means of harassment of the debtor or third persons." Wright, Miller, et al., *supra*, § 3014 n.4 (citing *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 232 (E.D. Pa. 2014)); *see also Caisson*, 62 F.R.D. at 334. The Court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" resulting from discovery. Fed. R. Civ. P. 26(c)(1). With regard to undue burden, specifically, the party seeking such an order bears the "burden of showing facts justifying [the] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome." *Moss v. Blue Cross & Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 689 (D. Kan. 2007) (quoting *Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).

The Court first addresses The Reinforcing Company's relevance-related objections to the Subpoena request, finding the Subpoena request necessary and relevant. The Court next addresses The Reinforcing Company's "undue burden" objection to the Subpoena request, finding that The Reinforcing Company does not demonstrate the asserted "undue burden" and, regardless, the Subpoena request does not qualify as unduly burdensome. Accordingly, the Court **denies** the Motion [#57].

**A.    Relevance-Related Objections**

The Reinforcing Company raises three relevance-related objections to the Subpoena request, namely that The Reinforcing Company is "an entirely unrelated entity," "formed

after the judgment against Defendant was entered," and that the Subpoena "request has nothing to do with the time the Defendant operated." *Motion* [#57] at 3. Plaintiffs respond that "discovery is necessary because [D]efendant no longer exists but may be operating as an alter ego to frustrate [P]laintiffs' collection efforts." *Response* [#59] at 5.

The Court finds the Subpoena request necessary and relevant, satisfying the "somewhat heightened" standard under Rule 69(a)(2) for "probing questioning of third parties." *Mountain Dudes*, 2013 WL 5435707, at *2; Wright, Miller, et al., *supra*, § 3014. Since Defendant ceased operations in mid-2014, Plaintiffs' collection efforts must focus, necessarily, on Defendant's assets, including assets held by potential alter egos. Furthermore, Plaintiffs offer "evidence sufficient to raise legitimate questions" about Defendant and The Reinforcing Company's relationship. *Id.* First, Plaintiffs cite similarity of Defendant and The Reinforcing Company's businesses, reinforcing concrete. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 23, 65. Second, Plaintiffs cite overlap and close familial relationships between Defendant and The Reinforcing Company: Mr. Garcia "was an owner and officer of [D]efendant" and currently serves as The Reinforcing Company's Superintendent, Mr. Garcia's wife owns The Reinforcing Company, and Mr. Garcia's father "worked in a supervisory role" for Defendant and currently serves as The Reinforcing Company's Operations Manager. *Response* [#59] at 4; *Depo. of Garcia* [#59-2] at 14, 20, 25, 52, 77-78.

The Reinforcing Company, however, ignores Plaintiffs' alter ego theory and evidence. The series of contract, financial, and meeting records that the Subpoena requests suggest Plaintiffs' pursuit of an alter ego theory. *See Subpoena* [#57-1] at 1, 6-7.

Indeed, the Subpoena request includes "[a]ny contract between [Defendant] Mile High Rodbusters and The Reinforcing Company, as well as any associated Exhibits, Attachments, or Addendum thereto." *Id.* at 6. The Motion [#57], nevertheless, fails to acknowledge Plaintiffs' alter ego theory. Although the Response explicitly discusses Plaintiffs' alter ego theory and offers evidence, furthermore, The Reinforcing Company failed to file a Reply. *See Response* [#59] at 3-6.

Plaintiffs' alter ego theory, therefore, addresses The Reinforcing Company's objections that The Reinforcing Company is "an entirely unrelated entity . . . formed after the judgment against Defendant was entered." *Motion* [#57] at 3. As Defendant did not have any collection efforts to defend against prior to judgment, The Reinforcement Company's potential formation as an "alter ego [designed] to frustrate Plaintiffs' collection efforts" came, naturally, after judgment. *Response* [#59] at 5. The temporal separation, contrary to The Reinforcing Company's objection, does not render the Subpoena request irrelevant. For the same reason, Plaintiffs' alter ego theory also addresses Defendant's objection that the Subpoena "request has nothing to do with the time the Defendant operated." *Motion* [#57] at 3. Although Defendant did not operate in the period of years covered by the Subpoena request, evidence from that period of years may establish The Reinforcement Company's potential formation as an "alter ego [designed] to frustrate Plaintiffs' collection efforts." *Response* [#59] at 5. The Court, accordingly, finds the Subpoena request necessary and relevant to determining whether The Reinforcing Company, in fact, constitutes Defendant's alter ego.

**B.    "Undue Burden" Objection**

The Reinforcing Company argues, furthermore, that the "burden of gathering the records requested over the period from 2016 to 2018 in the depth that the request is made imposes an undue burden due to its lack of relevance to the time period the Defendant operated in." *Motion* [#57] at 4. Plaintiffs respond that The Reinforcing Company "failed to provide any affidavits identifying the reasons why the document production is burdensome." *Response* [#59] at 5.

The Court finds that The Reinforcing Company does not, as required, demonstrate the alleged "undue burden." *See, e.g.*, *Moss*, 241 F.R.D. at 689. Indeed, the Court agrees with Plaintiffs that The Reinforcing Company's "naked claim that the document production is burdensome cannot substantiate [the] objection." *Response* [#59] at 6. The Reinforcing Company does not provide information such as, for example, estimates of the amount of time required to fulfill the Subpoena request, or the volume of responsive documents involved. Furthermore, to the extent The Reinforcing Company's "undue burden" objection depends on the Subpoena request's "lack of relevance to the time period the Defendant operated in," the Court's finding of relevance renders the objection moot. *Motion* [#57] at 3. Again, the Court finds the Subpoena request necessary and relevant to determining whether The Reinforcing Company, in fact, constitutes Defendant's alter ego.

The Court, furthermore, does not find The Reinforcing Company's burden "undue." The series of contract, financial, property and meeting records the Subpoena requests may provide additional evidence that The Reinforcing Company, in fact, constitutes Defendant's alter ego and aid Plaintiffs' collection efforts. *See Subpoena* [#57-1] at 1, 6-7. The Reinforcing Company's contracts may show shared customers, financial records may show

overlap in employees, and property records may show shared equipment. *Id.* The Court, therefore, finds that The Reinforcing Company does not demonstrate the asserted "undue burden" and, regardless, the Subpoena request does not qualify as unduly burdensome.

### III. Conclusion

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#57] is **DENIED**.

Dated: April 24, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge